IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EBONI BROWN, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | 1:23-CV-04503-ELR |
| | * | |
| CHICK-FIL-A, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

**O R D E R**

There are several matters presently pending before the Court. The Court sets forth its reasoning and conclusions below.

**I.     Background**

On October 3, 2023, Plaintiffs Eboni Brown, Tanique Clark, Travis Johnson, Dominic Greetan, Friday Frazier, and Keisha Rabon initiated this putative class action suit on behalf of themselves and several nationwide and state classes against Defendant Chick-fil-A, Inc. See Compl. [Doc. 1]. Plaintiffs assert a variety of state law claims arising out of Defendant's allegedly "deceptive and untruthful promises to provide free or flat flee, low-price delivery on food deliveries ordered through its app and website." See generally Am. Compl. [Doc. 14]. Specifically, Plaintiffs allege that when they ordered food for delivery from Defendant throughout some

unspecified period from before April 2021 until September 2022, Defendant advertised its food delivery services at a charge of either $2.99 or $3.99. Id. ¶¶ 2, 71–102.  However, Defendant supposedly "secretly mark[ed] up food prices for delivery orders by a hefty 25–30%," rendering its "promise of free or low-cost delivery patently false." Id. ¶¶ 4–5.  According to Plaintiff, Defendant "adopted its pricing strategy because it believed that consumers would make more purchases if [Defendant] misrepresented the true cost of delivery" and "designed its app to make it impossible for consumers to catch its hidden menu price inflation" by "ensur[ing] that food prices were only displayed on the app or website after a customer chose delivery or pickup[.]" Id. ¶¶ 7, 59.

"Purchases made through [Defendant's] mobile app or website are governed by [its] Terms and Conditions of Use" (the "Agreement"). See Declaration of Amber Thomas ("Thomas Decl.") ¶ 5 [Doc. 21-2].[1]  The Agreement applies to a consumer's "access to, and use of, any [of Defendant's] website, mobile application, and online service programs where the[ Agreement is] posted, linked or incorporated by reference ('CFA Online Services')." [Doc. 21-2 at 13].  The Agreement also states that Defendant

---

[1] Because a motion to compel arbitration is a "factual attack" on the Court's subject matter jurisdiction, "the Court may consider extrinsic documents and evidence beyond the allegations contained in the complaint." See Coleman v. Dep't Store Nat'l Bank: DSNB Macy's, Civil Action No. 1:22-CV-00178-MHC-JEM, 2022 WL 18777575, at *6 (N.D. Ga. Oct. 13, 2022), report and recommendation adopted, 2022 WL 18777528 (Nov. 3, 2022).

> "reserve[s] the right at any time to update, change, modify, or revise [it]. Any changes will become effective upon posting to CFA Online Services, along with the date on which it was most recently updated as indicated by the "Last Updated" notice above. Your continued access to or use of the CFA Online Services and its programs and offers after any such changes indicates your acceptance of the [Agreement] as modified. It is your responsibility to review the [Agreement] regularly for updates."

[Id.]

On September 10, 2021, Defendant amended the Agreement to include a paragraph regarding arbitration in the "Dispute Resolution" section (the "Arbitration Paragraph"). See Am. Compl. ¶ 40; Thomas Decl. ¶¶ 6–10; [see also Doc. 21-2 at 12–28] (the Agreement as it existed on September 10, 2021). That Paragraph reads in relevant part:

> You and we each agree that any controversy or claim arising out of or relating to these terms and conditions of use, or the breach thereof, including any questions of arbitrability [], shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its consumer arbitration rules by a sole arbitrator.

[Doc. 21-2 at 26]. According to Defendant, Plaintiffs Brown, Johnson, Frazier, and Rabon consented to the Agreement after it was modified to include the Arbitration Paragraph (the "Arbitration Plaintiffs"). See Thomas Decl. ¶¶ 14–22. Plaintiffs do not contest this assertion. [See generally Doc. 28].

Following Plaintiffs' initiation of this case, on December 4, 2023, Defendant timely moved the Court to compel arbitration, dismiss Plaintiffs' Complaint, and take judicial notice of various documents in support of its motion to dismiss. [See

3

Docs. 11, 12, 13]. Fourteen (14) days later, Plaintiffs filed their Amended Complaint.[2] See Am. Compl.; see also FED. R. CIV. P. 15(a)(1)(B) (permitting a party to amend its pleading once as a matter of course within twenty-one (21) days after service of a responsive pleading or Rule 12(b) motion). In response, Defendant filed a "Motion to Compel Arbitration and Stay Action," "Motion to Dismiss," and "Motion to Take Judicial Notice in Support of its Motion to Dismiss Plaintiff's Complaint." [See Docs. 21, 22, 23]. Having been fully briefed, Defendant's motions are now ripe for the Court's review. The Court first sets forth the applicable legal standards.

## II. Legal Standards

### A. Motion to Compel Arbitration

As a preliminary matter, the Parties do not dispute that the Agreement is governed by the Federal Arbitration Act ("FAA"). See Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1303 (11th Cir. 2014) ("The FAA applies to all contracts involving interstate commerce." (citing 9 U.S.C. §§ 1–2)); [Doc. 21-2 at 26] (the Agreement stating that the Arbitration Paragraph affects interstate commerce and that the FAA governs). The FAA provides a strong presumption in favor of arbitration, as codified in the relevant statute:

---

[2] The Court denies Defendant's motions directed at Plaintiffs' original Complaint as moot. See Southern Pilot Ins. Co. v. CECS, Inc., 15 F. Supp. 3d 1284, 1287 n.1 (N.D. Ga. 2013) ("an amended complaint supersedes the original complaint, and thus renders moot" any motions directed at the original complaint).

> an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; see Attix v. Carrington Mortg. Servs., LLC, 35 F.4th 1284, 1294 (11th Cir. 2022) (noting that the FAA "reflects . . . a liberal policy favoring arbitration" that "place[s] arbitration agreements on an equal footing with other contracts" and dictates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (cleaned up)).  But cf. Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022) (noting that the "FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules" (internal marks omitted)).  Additionally, sections 3 and 4 of the FAA mandate that federal district courts shall stay proceedings and "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  Even if the result is piecemeal litigation, courts must "rigorously enforce agreements to arbitrate." Id. at 221.  With this guidance in mind, when resolving a motion to compel arbitration, the Court must determine whether: "(1) there is a valid written agreement to arbitrate; (2) the issue sought to be arbitrated is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims." Wallace v. Rick Case Auto, Inc., 979 F. Supp. 2d 1343, 1347 (N.D. Ga. 2013) (alteration

adopted and internal quotation marks omitted) (citing Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002)).

However, an arbitration agreement may properly reserve the determination of the "gateway question" of arbitrability to the arbitrator through a "delegation provision," which is "an additional, antecedent agreement that is severable from the remainder of the arbitration agreement." Given v. M & T Bank Corp. (In re Checking Account Overdraft Litig.), 674 F.3d 1252, 1255 (11th Cir. 2012) (citing Rent-A-Center W., Inc. v. Jackson, 561 U.S. 63, 70 (2010)); accord Jones v. Waffle House, Inc., 866 F.3d 1257, 1264 (11th Cir. 2017) ("Among other things, the parties may agree to arbitrate the gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement"). Although "a court would normally decide threshold disputes about whether a party's claims are arbitrable," the "parties are free to have an arbitrator decide their threshold disputes instead." Attix, 35 F.4th at 1295; accord Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 68 (2019). When assessing whether the parties have agreed to arbitrate threshold questions, the court "reverses" the FAA's presumption favoring arbitration and "resolve[s] ambiguities in an agreement to arbitrate questions about the arbitrability of those claims in favor of the party opposing arbitration." Attix, 35 F.4th at 1295–96. Thus, courts should only enforce such provisions where it "finds that the parties have clearly and unmistakably agreed to

6

delegate questions of arbitrability to an arbitrator[.]" Id. at 1296; see also Given, 674 F.3d at 1255; CPR-Cell Phone Repair Franchise Sys., Inc. v. Nayrami, 896 F. Supp. 2d 1233, 1241 (N.D. Ga. 2012) ("[O]nce the district court finds clear and unmistakable evidence of an intent to arbitrate gateway questions, the district court is required to compel arbitration.").

"[W]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." Henry Schein, 586 U.S. at 68. "Thus, just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." Jones, 866 F.3d at 1264 (cleaned up). When "an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." Parnell v. CashCall, Inc., 804 F.3d 1142, 1144 (11th Cir. 2015). "Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [it] review the enforceability of the arbitration agreement as a whole." Parm v. Nat'l Bank of Cal., N.A., 835 F.3d 1331, 1335 (11th Cir. 2016). "When federal courts interpret arbitration agreements, state

7

contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration." Parnell, 804 F.3d at 1147.

### B. Georgia Contract Interpretation

"Georgia law is clear that construction of a contract is a matter of law for the court." Mehic v. Allstate Prop. & Cas. Ins. Co., 587 F. Supp. 3d 1327, 1331 (N.D. Ga. 2022) (cleaned up) (quoting Envision Printing, LLC v. Evans, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016)). The first step in contract construction is to "decide whether the" pertinent contractual "language is clear and unambiguous." Id. at 1331 (quoting Envision Printing, 786 S.E.2d at 252). "If it is, no construction is required" and the analysis ends there; "the court simply enforces the contract according to its clear terms." Id. (quoting Envision Printing, 786 S.E.2d at 252); First Data POS, Inc. v. Willis, 546 S.E.2d 781, 784 (Ga. 2001) ("Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning."). In deciding whether the relevant language is clear and unambiguous, "court[s] initially look[] to the four corners of the agreement to ascertain the meaning of the contract from the language employed" and, in so doing, give words "their usual and common" meaning. See Mehic, 587 F. Supp. 3d at 1331 (cleaned up) (quoting Brogdon v. Pro Futures Bridge Cap. Fund, L.P., 580 S.E.2d 303, 306 (Ga. Ct. App. 2003) and O.C.G.A. § 13-2-2(2)).

Ultimately, "[t]he contract . . . must be given a reasonable construction." S. Telecom, Inc. v. TW Telecom of Ga. L.P., 741 S.E.2d 234, 238 (Ga. Ct. App. 2013) (internal quotation marks and citations omitted). "[W]hen an arbitration clause or other part of a contract is ambiguous, Georgia courts construe it in favor of the party that did not draft it." Parm, 835 F.3d at 1337.

## III. Discussion

Having set forth the relevant legal standard, the Court turns to Defendant's "Motion to Compel Arbitration and Stay Action." [Doc. 21]. By that motion, Defendant requests that the Court compel arbitration between the Arbitration Plaintiffs and Defendant pursuant to the Agreement because the Arbitration Paragraph is valid, enforceable, and applies to the Arbitration Plaintiffs' claims, including those that predate the September 10, 2021 amendment of the Agreement. [See generally Doc. 21-1]. Alternatively, Defendant contends that, "[t]o the extent there is any doubt regarding the extent to which the claims are arbitrable, that dispute must be resolved by the arbitrator" pursuant to the Arbitration Paragraph's delegation clause (the "Delegation Clause"). [Id. at 14]. Finally, Defendant asks that the Court stay this action in its entirety pending Defendant and the Arbitration Plaintiffs' completion of arbitration. [Id. at 15–16]. In response, the Arbitration Plaintiffs argue that their claims are not subject to arbitration because the Arbitration Paragraph only applies to claims arising after the September 10, 2021 amendment

to the Agreement and does not operate retroactively. [See Doc. 28 at 11–18]. Otherwise, the Arbitration Plaintiffs insist that this Court must decide any threshold arbitrability questions because the Delegation Clause is "thwarted by a materially conflicting clause" and is not "clear and unmistakable evidence of an intent to delegate threshold questions of arbitrability" and, thus, is "ambiguous and unenforceable." [Id. at 8–10].

Upon review and consideration, the Court finds that the Delegation Clause is unambiguous and is clear and unmistakable evidence of Defendant and the Arbitration Plaintiffs' intent to delegate threshold questions of arbitrability to an arbitrator. In relevant part, the Arbitration Paragraph of the Agreement reads as follows:

> You and we each agree that *any* controversy or claim arising out of or relating to these terms and conditions of use, or the breach thereof, *including any questions of arbitrability* [], shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its consumer arbitration rules by a sole arbitrator.

[Doc. 21-2 at 26] (emphasis added). The Agreement's language is plain and unambiguous: "*any* questions of arbitrability" are to be determined by an arbitrator. [Id.] (emphasis added); see Jones, 866 F.3d at 1267 ("any dispute means all disputes, because any means all"). Indeed, the Eleventh Circuit has previously found similar provisions to be evidence that litigants "clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator." See Attix, 35 F.4th at 1296–97 (assessing

an agreement that stated "[t]he arbitrator shall also decide what is subject to arbitration unless prohibited by law"); Given, 674 F.3d at 1255–56 (finding language that an arbitrator would decide "[a]ny issue regarding whether a particular dispute or controversy is . . . subject to arbitration" to be evidence of an agreement to arbitrate threshold questions); see also Jones, 866 F.3d at 1267 (finding an agreement that provided an arbitrator "authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation" of the agreement to "clearly and unmistakably evince[] the parties' intent to arbitrate all gateway issues" and collecting cases in support).

Moreover, the Arbitration Paragraph's incorporation of the AAA's consumer arbitration rules is further evidence of Defendant and the Arbitration Plaintiffs' intent to delegate threshold questions of arbitrability to an arbitrator. See Attix, 35 F.4th at 1297 (finding "incorporation of the AAA's rules for consumer arbitration" to be evidence of a "clear[] and unmistakabl[e] agree[ment] to delegate questions of arbitrability to an arbitrator"); see also JPay, Inc. v. Kobel, 904 F.3d 923, 937 (11th Cir. 2018) ("Incorporating relevant AAA rules . . . is a clear and unmistakable indication of the parties' intent to decide not just whether the arbitration clause is valid, but whether it applies."); Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship., 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules . . . into their agreement, the parties clearly and

11

unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid"). Thus, the Court finds that the Delegation Clause unquestionably delegates the Parties' disputes regarding the applicability of the Arbitration Paragraph to the Arbitration Plaintiffs' claims to an arbitrator. [Doc. 21-2 at 26].

In their response brief, the Arbitration Plaintiffs do not offer argument with regard to the plain meaning of the Delegation Clause or the Arbitration Paragraph's incorporation of the AAA's rules for consumer arbitration. [See Doc. 28 at 8–10]. Instead, the Arbitration Plaintiffs contend that another clause in the Agreement "materially conflict[s]" with the Arbitration Paragraph and the Delegation Clause such that "any attempted delegation was thwarted" and rendered "ambiguous and unenforceable." [Id.] The portion the Arbitration Plaintiffs rely upon reads, in relevant part: "If a court or arbitrator determines in an action between you and us that any part of this Dispute Resolution provision cannot be enforced, the rest of this Dispute Resolution provision will continue to apply" (the "Severability Clause"). [See id. at 9] (quoting [Doc. 21-2 at 27]).

The Court finds the Arbitration Plaintiffs' argument unconvincing. The Severability Clause concerns severability of the provisions in the "Dispute Resolution" section of the Agreement—such as the Arbitration Paragraph and Delegation Clause—should any portion of the same be deemed unenforceable by a court or arbitrator. [Doc. 21-2 at 27]. Although the Severability Clause

contemplates determinations by either a court or arbitrator, it does not conflict with the Arbitration Paragraph's delegation of threshold questions of arbitrability to an arbitrator.  As Defendant correctly states, the Arbitration Paragraph and Delegation Clause "address *who* determines disputes concerning arbitrability" whereas the Severability Clause "addresses *what happens* if a portion of the" Arbitration Paragraph or other portion of the Agreement's "Dispute Resolution" section is found to be void or unenforceable.  [Doc. 29 at 6] (emphasis in original).  Indeed, regardless of what issues the Agreement purports to reserve for an arbitrator's assessment, this Court must still make determinations such as "whether a valid arbitration exists" and "that no grounds render the delegation agreement invalid or unenforceable" before enforcing any such delegation.  See Henry Schein, 586 U.S. at 69; Attix, 35 F.4th at 129 n.8.  Thus, the fact that the Agreement's Severability Clause contemplates potential court or arbitrator determinations with regard to enforceability of the various provisions of the "Dispute Resolution" section is not inconsistent with or render ambiguous the Arbitration Paragraph's clear and unmistakable delegation of gateway arbitrability questions to an arbitrator.  See MegaCorp Logistics LLC v. Turvo, Inc., No. 18-CV-01240-EMC, 2018 WL 3619656, at *6 (N.D. Cal. July 30, 2018) (finding existence of a severability clause that contemplated court action did not render the delegation clause ambiguous); Taylor v. Shutterfly, Inc., No. 18-CV-00266-BLF, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) ("an express

delegation provision is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court"); see also Shepherd v. Greer, Klosic & Daugherty, 750 S.E.2d 463, 465 (Ga. Ct. App. 2013) ("a word or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one" (alteration accepted and internal marks omitted)).  Therefore, the Arbitration Plaintiffs' argument is uncompelling and does not alter the Court's finding of a clear and unmistakable intent to arbitrate threshold questions.

Accordingly, the Court enforces the Agreement and refers Defendant and the Arbitration Plaintiffs' threshold questions and disputes regarding arbitrability to an arbitrator.  [See Doc. 21-2 at 26]; see also Henry Schein, 586 U.S. at 68–69 ("a court may not decide an arbitrability question that the parties have delegated to an arbitrator"; "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue").

And because the Court refers the gateway disputes of arbitrability to an arbitrator, it also grants Defendant's request to stay this case in its entirety pending the conclusion of that arbitration.  See 9 U.S.C. § 3.  Although the Arbitration Plaintiffs urge the Court to allow Plaintiffs Greetan and Clarke's claims

to proceed during the pendency of arbitration, the Court disagrees.[3] [Doc. 28 at 18–19]. In the course of resolving threshold disputes, the arbitrator could decide that the Arbitration Plaintiffs' claims are not subject to arbitration pursuant to the Agreement in which case litigation of those claims would then proceed in this Court alongside Plaintiffs Greetan and Clarke's claims. Thus, in the interests of conserving resources, achieving consistent outcomes, and avoiding duplicative proceedings given that Plaintiffs' claims all rest on similar allegations and legal theories and the Arbitration Plaintiffs' claims constitute a majority of the total claims in this lawsuit, the Court finds that the most prudent course of action is to stay this case in its entirety.[4] See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."); Klay v. All Defendants, 389 F.3d 1191, 1204 (11th Cir. 2004) (observing that "courts have discretion to stay nonarbitrable claims" depending on "if it is feasible to proceed with the litigation" and "whether arbitrable claims predominate"); Chemence v. Quinn, Civil Action No. 1:11-CV-01366-RLV, 2012 WL 12873615,

---

[3] The Court also finds the Arbitration Plaintiffs' request to dismiss their claims and allow them to immediately appeal unsupported. [See Doc. 28 at 18]; Anderson v. Goodleap, LLC, No. 8:23-CV-02366-WFJ-TGW, 2023 WL 8599789, at *2 (M.D. Fla. Dec. 12, 2023) ("If a court compels arbitration, it should stay, rather than dismiss, the arbitrable claims.").

[4] Indeed, Defendant moved to dismiss all of Plaintiffs' claims. [See Doc. 22].

at *6 (N.D. Ga. Oct. 15, 2012) (staying an entire action "pending an initial decision by the arbitrator as to which claims are subject to the arbitration agreement" even though not all parties were compelled to arbitrate in part because "the plaintiffs' claims are commingled with the facts and circumstances potentially to be litigated in the arbitration proceedings" and to avoid "the possibility of inconsistent outcomes" and "unnecessary expenses").

### IV. Conclusion

For the foregoing reasons, the Court **DENIES AS MOOT** Defendant's "Motion to Compel Arbitration and Stay Action" [Doc. 11], "Motion to Dismiss" [Doc. 12], and "Motion to Take Judicial Notice in Support of its Motion to Dismiss Plaintiffs' Complaint." [Doc. 13]. The Court **GRANTS IN PART AND DENIES AS MOOT IN PART** Defendant's "Motion to Compel Arbitration and Stay Action." [Doc. 21]. Specifically, the Court **GRANTS** the motion in that it **ORDERS** Defendant and the Arbitration Plaintiffs to submit their threshold disputes regarding arbitrability of the Arbitration Plaintiffs' claims to an arbitrator in accordance with the Agreement and stays the case as to all Parties. The Court **DENIES AS MOOT** the motion in all other respects. The Court **DIRECTS** the Parties to file a joint status update on the docket within seven (7) days of the conclusion of their arbitration.

Next, the Court **RESERVES** its rulings on Defendant's "Motion to Dismiss" [Doc. 22] and "Motion to Take Judicial Notice in Support of its Motion to Dismiss Plaintiffs' Complaint" [Doc. 23] pending the outcome of arbitration on the threshold arbitrability disputes.  Finally, rather than maintain this matter on the Court's active docket during the pendency of Defendant and the Arbitration Plaintiffs' forthcoming arbitration, the Court finds that the most prudent course of action is to **ADMINISTRATIVELY CLOSE** this case.[5]

**SO ORDERED**, this 18th day of June, 2024.

*Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia

---

[5] The Court notes that administrative closure will not prejudice the rights of any Party to this litigation.  A Party need only file a motion to reopen the case if it so chooses.